IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL PADRO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-1159-L |
| | § | |
| LOGISTICS INSIGHT | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment ("Defendant's Motion") (Doc. 24), filed December 16, 2024. After careful consideration of Defendant's Motion, the response, reply, appendices, record, and applicable law, the court **denies** Defendant's Motion.

### I. Procedural and Factual Background

This is an employment discrimination case. On May 19, 2023, Plaintiff Daniel Padro ("Mr. Padro" or "Plaintiff") filed an Original Complaint ("Complaint") against his former employer, Logistics Insight Group ("Defendant"). He alleges that while he was employed by Defendant, his then-fiancée and current wife, Yinaira Molina ("Ms. Molina")—who was also employed by Defendant—filed a formal sexual harassment grievance against another of Defendant's employees. Mr. Padro alleges that, after he actively opposed Ms. Molina's sexual harassment and refused Defendant's instruction that he direct his fiancée to drop her grievance, Defendant retaliated against him by terminating his employment. Mr. Padro contends that Defendant's retaliatory conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII") and the Texas Commission on Human Rights Act, Tex. Lab. Code §§ 21.051–21.061

Memorandum Opinion and Order - Page 1

("TCHRA").[1] *See* Compl. (Doc. 1). He seeks compensatory damages in the form of lost compensation and benefits, liquidated damages, prejudgment interest, attorney's fees, and costs. *See id.*

The court now sets forth the facts upon which it relies to resolve Defendant's Motion. The court recounts the evidence in the light most favorable to Plaintiff, as the summary judgment nonmovant, and draws all reasonable inferences in his favor in accordance with the standard in Section II of this opinion. Of note, both Mr. Padro and Ms. Molina required Spanish-to-English interpreters at their respective depositions and the record reflects some confusion regarding interpretation.

### A. Mr. Padro's and Ms. Molina's Employment with Defendant

In 2016, Mr. Padro began working for Defendant at its Arlington, Texas facility. Def.'s App., Doc. 26-2 at 3 (Padro Dep. Tr. 18:15).[2] In October 2020, Defendant promoted Mr. Padro from his position as a loader to the managerial position of floor supervisor *Id.*, Doc. 26-2 at 5 (Padro Dep. Tr. 22:13-23). Mr. Padro reported directly to Alex McCain ("Mr. McCain"). Pl.'s Resp. App., Doc. 30-1 at 6 (Padro Dep. Tr. 23:4-20). At all relevant times, Ms. Molina also worked at Defendant's Arlington facility as a sequencer or picker (picking parts to pack and ship) in the production department. Def.'s App., Doc. 26-1 at 4 (Biggs Dep. Tr. 6:13-18).

---

[1] As recently noted by the Fifth Circuit, "The Texas Commission on Human Rights (TCHR) has been replaced with the Texas Workforce Commission (TWC), Tex. Lab. Code § 21.0015, but courts still regularly refer to Chapter 21 of the Texas Labor Code as the TCHRA. We will follow suit." *Bunker v. Dow Chem. Co.*, 111 F.4th 683, 685 (5th Cir. 2024) (internal citation omitted).

[2] Citations to the record and briefs refer to the CM/ECF page numbers at the top of the page, rather than the parties' pagination at the bottom. "Def.'s App." refers to the "Defendant's Appendix of Exhibits to Brief in Support of Motion for Summary Judgment." "Pl.'s Resp. App." refers to the "Appendix to Plaintiff's Response to Motion for Summary Judgment."

**Memorandum Opinion and Order - Page 2**

### B. Ms. Molina's May 25, 2021 Sexual Harassment Grievance

In May 2021, Jon Elwood ("Mr. Elwood"), a supervisor at the Arlington facility, began working the second shift, the same shift worked by Ms. Molina. Pl.'s Resp. App., Doc. 30-1 at 34 (McCain Dep. Tr. 12:4-8). At her deposition, as set forth below, Ms. Molina testified that when he was moved to the second shift, Mr. Elwood began staring at her in a "sly" and "lascivious" (sexual) way, ongoing for one week, maker her uncomfortable, until she finally reported it:

Q: So is it your testimony that he was making you feel uncomfortable the entire week?

A: Yes.

*Id.*, Doc. 30-1 at 73-74 (Molina Dep. Tr. 17:25–18:2).

Q: You indicated in your prior testimony that Jon Elwood was watching you for an entire week.

Do you recall that testimony?

A: Yes

Q: And that's still your testimony?

A: Yes.

*Id.*, Doc. 30-1 at 75 (Molina Dep. Tr. 20:13-18).

Mr. Padro testified at his deposition that Ms. Molina told him that Mr. Elwood would stare at her for hours and followed her to the bathroom, making her feel uncomfortable and even scared. *Id.*, Doc. 30-1 at 8-10 (Padro Dep. Tr. 35:19–36:8; 37:4-10). When questioned by Defendant's counsel regarding how many meters it was from Ms. Molina's workstation to the restroom, Mr. Padro stated that the distance was "a good walk away." *Id.*, Doc. 30-1 at 8-10 (Padro Dep. Tr. 38:11-12). Upon further questioning regarding whether the distance was "the length of a soccer field," Mr. Padro testified that the distance Mr. Elwood traversed when he followed Ms. Molina

**Memorandum Opinion and Order - Page 3**

to the bathroom was "more or less a half a soccer field." *Id.*, Doc. 30-1 at 11 (Padro Dep. Tr. 38:16-17). In this regard, the court takes judicial notice that a typical soccer field is 110–120 yards long. This means that Mr. Elwood followed Ms. Molina for as much 60 yards (180 feet) as she walked from her workstation to the restroom. In the context of dealing with a summary judgment motion, the court examines the competent evidence in the light most favorable to the nonmovant. The court can think of no reason why a male would follow a female for such a distance at the workplace, unless the male was "up to something" morally despicable. Mr. Elwood's conduct indicates something far more than a mischievous act or childhood prank.

On May 25, 2021, Ms. Molina submitted a formal sexual harassment grievance with the help of her union representative, Roderick Russel ("Mr. Russel"), stating as follows:

> UAW charge management with violation ART 3 SEC 1 and ART 14 SEC 7 category 3 sexual harassment on Jon Elwood on May 22 Yinaira Molina says Jon watching her for over and [sic] hour. UAW Demand disciplinary action and corrective action based on severity of case. That he even followed her to the bathroom she is so shock [sic] up don't [sic] feel comfortable in work environment leering, which is sly, lascivious look or sideways glance suggesting a sexual interest or malicious intent, is an unwelcome and persistent kind of staring that constitutes harassment and UAW is aware that this is not first accusation.

*Id.*, Doc. 30-2 at 6-7 (May 25, 2021 Grievance).[3] When Mr. Roderick gave the grievance to Ryan Maurer ("Mr. Maurer"), the Labor Relations Manager, Mr. Roderick stated that other employees had mentioned accusations against Mr. Elwood. *Id.*, Doc. 30-2 at 30-31 (Maurer Dep. Tr. 33:16-34:4).

---

[3] As noted in Plaintiff's response brief, *see* Pl.'s Resp. Br. 8 (Doc. 29), the record reflects an extended discussion during Ms. Molina's deposition about the words used in her grievance. The court's review of the transcript and summary judgment record confirms that there were some challenges based on language. As an example, counsel for Defendant examined Ms. Molina at length about what "sly" means. *See* Pl.'s Resp. App., Doc. 30-1 at 77-78 (Molina Dep. Tr. 77:17-78:15). Ms. Molina stated at her deposition that when she filed her grievance, she had to use an interpreter. *Id.*, Doc. 30-1 at 78 (Molina Dep. Tr. 78:13-25). When asked what "lascivious" means, she described it as "with intentions that are not—that are—that are, like, not normal. They're, like, sexual." *Id.*, Doc. 30-1 at 79 (Molina Dep. Tr. 79:2-5).

**Memorandum Opinion and Order - Page 4**

### C. May 25, 2021 Meeting in Mr. Maurer's Office

After Ms. Molina filed her grievance, Mr. Maurer called Mr. McCain into his office and asked him to text Mr. Padro to join them. *Id.*, Doc. 30-1 at 32 (McCain Dep. Tr. 10:16-21). In that meeting, "Ryan [Maurer] asked Daniel [Padro] to tell [Ms. Molina] to drop the allegations against Jon Elwood." *Id.*, Doc. 30-1 at 32 (McCain Dep. Tr. 10:22-24); *see also id.*, Doc. 30-1 at 15-17 (Padro Dep. Tr. 53:14–55:3). Mr. Padro refused to comply with Mr. Maurer's request. *Id.*, Doc. 30-1 at 32-33 (McCain Dep. Tr. 10:24–11:6). In addition, Mr. Maurer told Mr. Padro that Mr. Mitchell believed Mr. Padro was the one instigating the sexual harassment complaint. *Id.*, Doc. 30-1 at 24 (Padro Dep. Tr. 98:1-9).

During this same meeting, Mr. Padro was visibly doubled over in pain. *Id.*, Doc. 30-1 at 35 (McCain Dep. Tr. 17:18-22). No one at the meeting asked Mr. Padro why he was doubled over in pain because his health issues were already known. *Id.*, Doc. 30-1 at 35 (McCain Dep. Tr. 17:18–18:16).

After the meeting, Mr. Padro informed Mr. McCain that he was having pain as a result of prostate issues and kidney stones and needed to leave early. *Id.*, Doc. 30-1 at 31 (McCain Dep. Tr. 9:17-22); *see also id.*, Doc. 30-1 at 22-23 (Padro Dep. Tr. 71:14–72:5). Mr. McCain stated at his deposition that he was Mr. Padro's direct supervisor and had the authority to allow Mr. Padro to leave work due to illness; and that he authorized Mr. Padro to leave work early on May 25, 2021. *Id.*, Doc. 30-1 at 30-31 (McCain Dep. Tr. 9:9–10:3). No one associated with Defendant ever inquired whether he had authorized Mr. Padro to leave on May 25, 2021. *Id.*, Doc. 30-1 at 30 (McCain Dep. Tr. 9:9-12).

**Memorandum Opinion and Order - Page 5**

### D.  May 26, 2021 Meeting

On May 26, 2021, Mr. Mitchell called Mr. Padro into his office. *Id.*, Doc. 30-1 at 12-14 (Padro Dep. Tr. 48:7–50:10). At that time, Mr. Mitchell accused Mr. Padro of orchestrating the sexual harassment complaint and told him that he was holding his termination papers in his hand and that Mr. Padro could take them to unemployment. *Id.* Mr. Mitchell said that Ms. Molina's sexual harassment complaint was Mr. Padro's "f*&%ing idea."[4] *Id.*, Doc. 30-1 at 24 (Padro Dep. Tr. 98:4-9). Mr. Mitchell then informed Mr. Padro that he was fired. *Id.*, Doc. 30-1 at 12-14 (Padro Dep. Tr. 48:7–50:10).

Mr. Padro never told Mr. Mitchell or Mr. Maurer that he was going to quit his job. *Id.*, Doc. 30-1 at 20-21 (Padro Dep. Tr. 69:12–70:8). At no time after Mr. Mitchell terminated Mr. Padro's employment on May 26 did anyone from Defendant attempt to contact him. *Id.*, Doc. 30-1 at 25 (Padro Dep. Tr. 106:6-25).

Further, it is undisputed that at the meetings on May 25 and May 26, Mr. Padro complained to his superiors about Mr. Elwood's sexual harassment of Ms. Molina and demanded of his superiors that Defendant take action to remedy the matters raised in her formal grievance. *Id.*, Doc. 30-2 at 9-11 (Mitchell Dep. Tr. 25:15–27:9); *id.*, Doc. 30-2 at 32-33 (Maurer Dep. Tr. 35:6-20 and 36:8-11); *id.*, Doc. 30-2 at 21-23 (Biggs Dep. Tr. 47:22–49:16).

### E.  The Incident Action Report

On May 26, 2021, Mr. Mitchell prepared an Incident Action Report ("IAR") indicating that Mr. Padro "left the facility without permission" on May 25, 2021. *Id.*, Doc. 30-1 at 93 (Incident Accident Report). Mr. Mitchell also noted on the IAR that on May 26, 2021, Mr. Padro "walked off job." *Id.* On May 27, 2021, Mr. Mitchell added to the IAR that Mr. Padro was "NCNS," and

---

[4] Assuming Mr. Mitchell made this vulgar and unprofessional statement, which the court must accept as true at this stage, he is a boor and unfit to be in a supervisory or managerial role.

Memorandum Opinion and Order - Page 6

elaborated that he was "many times no call no show" and that a human resources representative attempted to call Mr. Padro to return to work, but that he did not return the calls. *Id.*

## II.    Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could

**Memorandum Opinion and Order - Page 7**

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Defendant's Motion for Summary Judgment

Mr. Padro contends that Defendant fired him in retaliation (1) for his opposition to Ms. Molina's reported sexual harassment—that is, when he confronted Mr. Maurer and Mr. Mitchell and demanded they address her sexual harassment complaint—and; (2) for his refusal to comply with their demand that he convince Ms. Molina to withdraw her sexual harassment complaint.

**Memorandum Opinion and Order - Page 8**

### A.  Retaliation under Title VII and the TCHRA

The antiretaliation provision of Title VII provides it is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The first of these is known as the "opposition clause;" the second as the "participation clause." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016). Only the opposition clause is at issue here.

The United States Supreme Court has interpreted these retaliation provisions to have a broad reach. In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court held that "Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 67. The Supreme Court held that "the antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* In describing "the level of seriousness to which this harm must rise before it becomes actionable retaliation[,]" the Court agreed with the "formulation set forth by the Seventh and the District of Columbia Circuits," and held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67-68 (citation and internal quotation marks omitted). The Court also reaffirmed that "[t]he antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms. . . . It does so by prohibiting employer

**Memorandum Opinion and Order - Page 9**

actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* (quotations omitted).

When, as here, a retaliation claim under Title VII is based on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework similar to that in discrimination cases applies. *Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under this framework, the plaintiff has the burden to prove a prima facie case of retaliation—or raise a genuine dispute of material fact—"by showing (1) she engaged in a protected activity; (2) she 'suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *Id.* (quoting *Byers*, 209 F.3d at 427).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Id.* (quoting *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. Likewise, Mr. Padro's state law retaliation claim, brought pursuant to the TCHRA, must be established by the but-for causation standard. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d. 483, 489 (5th Cir. 2004) (citations omitted).[5] The but-for standard, however, "does not apply at the prima facie case stage."

---

[5] Like Title VII, the TCHRA protects from retaliation an employee who "'(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.'" *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 525 (5th Cir. 2021) (quoting Tex. Lab. Code § 21.055; *see Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 585 (Tex. 2017). Under Section 21.055, a claim for retaliation requires a plaintiff to show or raise a genuine dispute of material fact that "(1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015). A plaintiff must present evidence showing that his protected class status was the but-for cause for the defendant's decision. *Pineda v. United States Parcel Serv.*, 360 F.3d 483, 488 (5th Cir. 2004). In *Pineda*, the Fifth Circuit clarified

*Brown*, 969 F.3d at 577 (citing *Garcia v. Professional Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019)). "At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia*, 938 F.3d at 243. "However, '[t]he protected act and the adverse employment action must be very close in time to establish causation by timing alone.'" *Brown*, 969 F.3d at 578 (quoting *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015)). The Fifth Circuit has recognized periods of six weeks to two-and-a-half months "are close enough to show a causal connection." *Id.* (noting that the Fifth Circuit has previously held that a period of two-and-a-half months, a period of two months, and a period of six-and-a-half weeks between the protected act and adverse employment action "are close enough to show a causal connection").

Under the *McDonnell Douglas* framework, if the plaintiff establishes his prima facie case, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Awe v. Harris Health Sys.*, 163 F.4th 969, 972 (5th Cir. 2026) (citation and internal quotation marks omitted). "If [the employer] is able to do so, [the court] considers whether the plaintiff has produced 'evidence from which a jury could conclude that [the employer's] articulated reason is pretextual.'" *Id.* (quoting *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (brackets added)).

---

that the Texas Supreme Court's decision in *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 479-80 (Tex. 2001), relied on the text of Sections 21.125(a), and Section 21.055 requires the same pretext standards of proof for claims brought under the TCHRA as the standards of proof for claims brought pursuant to Title VII. *Id.* Thus, Section 21.125(a) claims—which include claims for discrimination based on race, color, sex, national origin, religion, age, and disability *but not retaliation claims*—require the less-exacting motivating factor standard, while Section 21.055 claims for retaliation require the but-for standard to show pretext. *Id.* Because Mr. Padro's claims are for retaliation under Section 21.055, the court will apply the same analysis for Mr. Padro's Title VII and TCHRA retaliation claims.

**Memorandum Opinion and Order - Page 11**

### B. Discussion

Defendant moves for summary judgment on Mr. Padro's Title VII and TCHRA retaliation claims.[6] Defendant does not dispute, at least for purposes of its summary judgment motion, that Mr. Padro suffered an adverse employment action.[7] Defendant contends, however, that Mr. Padro cannot establish a prima facie case because he cannot show that he "engage[d] in any protected activity" and, absent protected activity, he "cannot prove a causal connection between any adverse action and the protected activity." Def.'s Br. 9 (Doc. 25). More specifically, Defendant argues that

> Molina's underlying allegations of harassment that Padro relies upon to support that he engaged in protected activity does not convert the alleged conduct into something that it is not – actionable sexual harassment under Title VII. And without any protected activity, Padro cannot establish the first and third elements of his prima facie case. Padro's retaliation claim fails for these reasons.

*Id.* at 16. Defendant further maintains, "Here, neither Padro nor Molina engaged in any protected activity as the alleged harassment noted within the grievance and raised in Padro's subsequent discussions with Maurer and Mitchell do not rise to a level of any actionable harassment under Title VII." *Id.* at 11.[8]

In response, Mr. Padro contends that "[m]any or most of the facts alleged by Defendant as 'undisputed' are, in fact, very much disputed." Pl.'s Resp. Br. 5 (Doc. 29). He further asserts that

---

[6] Before an individual may pursue a Title VII claim in federal court, he must timely exhaust administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Plaintiffs must also exhaust administrative remedies prior to filing a civil action under the TCHRA. *Bunker v. Dow Chem. Co.*, 111 F.4th 683, 686 (5th Cir. 2024). Defendant does not challenge the timeliness of Mr. Padro's Title VII and TCHRA claims or whether he exhausted his administrative remedies.

[7] In a footnote, Defendant asserts that, "even assuming Padro is able to establish the second element of his prima facie case and proves that he was subject to adverse action, Padro's retaliation claim still fails for the reasons described herein." Def.'s Br. 11 n.3. Defendant makes clear in its brief that its sole argument is that "without any protected activity, Padro cannot establish the first and third elements of his prima facie case. Padro's retaliation claim fails for these reasons." *Id.* at 16.

[8] Insofar as Defendant raises new arguments in its reply brief, the court declines to address them or rely upon them. *See Georgia Firefighters' Pension Fund v. Anadarko Petro. Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) ("But when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence.").

Memorandum Opinion and Order - Page 12

genuine disputes of material fact preclude summary judgment on his retaliation claims. *Id.* at 14-23.

Evidence that the plaintiff opposed the defendant's conduct, standing alone, does not satisfy the opposition clause. Rather, the clause "requires opposition *of a practice made unlawful by Title VII.*" *Rite Way*, 819 F.3d at 240 (emphasis in original) (citing 42 U.S.C. § 2000e-3(a)). As the Fifth Circuit has made clear, however, the standard is not whether the plaintiff can successfully state and support a Title VII claim but whether the plaintiff "*reasonably believed* the employment practice to be unlawful." *Id.* (emphasis added) (citation omitted). Thus, internally complaining about an employment practice may constitute protected activity, so long as the complainant "reasonably believed the employment practice to be unlawful." *Id.*; *see also Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) ("An employee [who] files an internal complaint of discrimination engages in a protected activity.") (citing *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-99 (2003)). In other words, contrary to Defendant's arguments, *see* Def.'s Br. 12-15, that Mr. Padro may not have demonstrated a triable issue on all the essential elements of a Title VII hostile work environment claim does not preclude a finding that he had a reasonable belief that Defendant's actions violated the antiretaliation provisions of Title VII and the TCHRA.

Considering the totality of the competent summary judgment evidence, the court determines that the evidence, viewed in the light most favorable to Mr. Padro, is sufficient to raise a genuine dispute of material fact that Mr. Padro held a reasonable belief that Defendant's actions violated Title VII and the TCHRA, and that Defendant fired him for engaging in a protected activity.

**Memorandum Opinion and Order - Page 13**

### 1. *Protected Activity*

As previously explained, "[p]rotected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. National Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). As relevant to this matter, the Supreme Court has made it clear that "opposing" a discriminatory practice includes answering questions of the employer about someone else's complaint/treatment, as well as failing to prevent another from filing a complaint:

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons. *Cf. McDonnell* [*v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996)] (finding employee covered by Title VII of the Civil Rights Act of 1964 where his employer retaliated against him for failing to prevent his subordinate from filing an EEOC charge). There is, then, no reason to doubt that a person can "oppose" by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

*Crawford v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 277-78 (2009).

Here, Mr. Padro presents evidence that Defendant retaliated against him by terminating his employment after (1) he complained to Mr. Maurer and Mr. Mitchell concerning Ms. Molina's sexual harassment complaint and demanded they do something about it, and (2) because he refused Defendant's instruction that he tell Ms. Molina to drop her formal sexual harassment grievance. Mr. McCain, Mr. Padro's supervisor, testified at his deposition that after Ms. Molina filed her grievance, on May 25, 2021, Mr. Maurer called Mr. McCain into his office and asked him to text

**Memorandum Opinion and Order - Page 14**

Mr. Padro to join them. Pl.'s Resp. App., Doc. 30-1 at 32 (McCain Dep. Tr. 10:16-21). In that meeting, "Ryan [Maurer] asked Daniel [Padro] to tell [Ms. Molina] to drop the allegations against Jon Elwood." *Id.*, Doc. 30-1 at 32 (McCain Dep. Tr. 10:22-24); *see also id.*, Doc. 30-1 at 15-17 (Padro Dep. Tr. 53:14–55:3). Mr. Padro refused to comply with Mr. Maurer's request. *Id.*, Doc. 30-1 at 32-33 (McCain Dep. Tr. 10:24–11:6). In addition, Mr. Maurer told Mr. Padro that Mr. Mitchell believed Mr. Padro was the one instigating the sexual harassment complaint. *Id.*, Doc. 30-1 at 24 (Padro Dep. Tr. 98:1-9).

On May 26, 2021, Mr. Mitchell called Mr. Padro into his office. *Id.*, Doc. 30-1 at 12-14 (Padro Dep. Tr. 48:7–50:10). At that time, Mr. Mitchell accused Mr. Padro of orchestrating the sexual harassment complaint and told him that he was holding his termination papers in his hand and that Mr. Padro could take them to unemployment. *Id.* Mr. Mitchell said that Ms. Molina's sexual harassment complaint was Mr. Padro's "f*&%ing idea." *Id.*, Doc. 30-1 at 24 (Padro Dep. Tr. 98:4-9). Mr. Mitchell then informed Mr. Padro that he was fired. *Id.*, Doc. 30-1 at 12-14 (Padro Dep. Tr. 48:7–50:10).

Further, it is undisputed that at the meetings on May 25 and May 26, Mr. Padro complained to his superiors about Mr. Elwood's sexual harassment of Ms. Molina and demanded of his superiors that Defendant take action to remedy the matter. *Id.*, Doc. 30-2 at 9-11 (Mitchell Dep. Tr. 25:15–27:9); *id.*, Doc. 30-2 at 32-33 (Maurer Dep. Tr. 35:6-20 and 36:8-11; *id.*, Doc. 30-2 at 21-23 (Biggs Dep. Tr. 47:22–49:16). On May 26, 2021, after Mr. Padro opposed Ms. Molina's sexual harassment and what he perceived as Defendant's failure to take action on her grievance, Mr. Mitchell informed Mr. Padro that he was fired. *Id.*, Doc. 30-1 at 12-14 (Padro Dep. Tr. 48:7–50:10).

**Memorandum Opinion and Order - Page 15**

On this record, and viewing all evidence in the light most favorable to Mr. Padro as the summary judgment nonmovant, the court concludes that he has presented sufficient evidence to raise a genuine dispute of material fact as to his "reasonable belief" that Defendant's conduct described above at the May 25 and May 26 meetings violated Title VII and the TCHRA, and that he engaged in protected activity. Further, viewing the evidence in the light most favorable to Mr. Padro, the court has little trouble concluding that Defendant's actions are of the sort that fall within the reach of the antiretaliation provisions, that is, they are likely "to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 68 (cleaned up).

### 2. *Causal Connection*

As previously explained, Defendant contends that Mr. Padro cannot establish a prima facie case of retaliation under Title VII or the TCHRA because he cannot show that he "engage[d] in any protected activity" and, absent protected activity, he "cannot prove a causal connection between any adverse action and the protected activity." Def.'s Br. 9. Notably, in its summary judgment brief, *Defendant provides no other argument in support of its contention that Mr. Padro has failed to establish the third prong of his prima facie case, that is, a causal connection between any adverse action and the protected activity.* Otherwise stated, Defendant has "put all its eggs in one basket." Because the court has determined that Mr. Padro has raised a genuine dispute of material fact that he engaged in protected activity, thereby satisfying the first element of his prima facie case, Defendant's remaining argument regarding causal connection, the third element of his prima facie case, likewise fails.[9]

---

[9] Even if Defendant had moved for summary judgment with respect to the third element of a prima facie case—a causal connection between any adverse action and the protected conduct—the court determines that Mr. Padro presented sufficient evidence to establish a prima facie case of a causal connection, as evidence shows only one day between the exercise of his protected activity and termination.

**Memorandum Opinion and Order - Page 16**

Finally, the court could press forward under the *McDonnell Douglas* burden shifting framework to determine whether Defendant articulated a legitimate, non-discriminatory reason for the adverse employment action and, if so, whether Mr. Padro had produced evidence from which a jury could conclude that Defendant's articulated reason was pretextual. *See Awe*, 163 F.4th at 972. Defendant, however, never made these arguments in its brief supporting its Motion, but moved for summary judgment *solely* with respect to Mr. Padro's prima facie case. The court cannot protect Defendant from its own strategic choice, as it was incumbent upon Defendant to specify the grounds upon which it sought summary judgment. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *see also Molina v. Home Depot USA, Inc.*, 20 F.4th 166, 169 (5th Cir. 2021) (citing *John Deere Co. v. American Nat'l Bank*, 809 F.2d 1190, 1192 (5th Cir. 1987) ("Typically, a district court may grant summary judgment only on grounds requested by the moving party.")); *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007) (quoting *Baker v. Metropolitan Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004) ("Generally, 'a district court may not grant summary judgment sua sponte on grounds not requested by the moving party.'")); Fed. R. Civ. P. 56(f)(2) (providing that the court may "grant the motion on grounds not raised by a party" but only "[a]fter giving notice and a reasonable time to respond").

## IV.    Conclusion

For the reasons stated herein, viewing all evidence in the light most favorable to Mr. Padro as the summary judgment nonmovant, genuine disputes of material fact remain as to his Title VII and TCHRA retaliation claims. Accordingly, the court **denies** Defendant's Motion for Summary

**Memorandum Opinion and Order - Page 17**

Judgment (Doc. 24). The court will reset the trial of this case and pretrial deadlines by separate order.

**It is so ordered** this 1st day of May, 2026.

Sam A. Lindsay
United States District Judge